IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LANDRIA BRITT, as ADMINISTRATRIX of the ESTATE OF JOHN W. BRITT, deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:06cv868-ID |
| | ) | (WO) |
| v. | ) | |
| | ) | |
| USA TRUCK, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this wrongful death lawsuit, Landria Britt, as administratrix of the estate of her deceased husband (John W. Britt), brings state-law claims against the driver of a tractor-trailer (Theodore L. Johnson) and his employer (USA Truck), arising from a collision which occurred when the tractor-trailer turned left into the path of the pickup truck driven by the deceased.[1] Before the court is Defendants USA Truck, Inc., and Theodore L. Johnson's motion for partial summary judgment, which is accompanied by a brief and an evidentiary submission. (Doc. Nos. 16-17.) Plaintiff filed a brief and an evidentiary submission in opposition to the motion for partial summary judgment. (Doc. No. 40.) After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' motion for partial summary judgment is due to be denied on the wantonness claim, but that further briefing is necessary for the court to make an informed decision on the remaining claims which are the subject of the motion.

---

[1] The court refers to Defendants individually as "USA Truck" and "Johnson." To avoid confusion, the court refers to Landria Britt as "Plaintiff" and John W. Britt as "Britt."

## II.  JURISDICTION AND VENUE

Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1441(a) (removal jurisdiction).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both personal jurisdiction and venue.

## III.  STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).  Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## IV.  BACKGROUND

Viewed in the light most favorable to Plaintiff, the material summary judgment facts are as follows.  On Monday, February 20, 2006, Johnson was driving a tractor-trailer in the line and scope of his employment for USA Truck.  He was headed to Houston, Texas, to deliver a shipment of 40,000 pounds of fiberglass.  (Johnson Dep. at 80, 89, 112, 141.)  Needing fuel and a place to spend the night after a full day of driving,[2] Johnson exited interstate 65 in Montgomery,

---

[2] That morning, Johnson began his drive from Hall River, North Carolina.  (Johnson Dep. at 181.)

2

Alabama, onto the West South Boulevard, a blacktopped seven-lane highway consisting of three eastbound lanes, three westbound lanes and a center turn lane. (Id. at 75-76, 137.) By this time, the rain had reduced to a drizzle, but the roadway was wet. (Id. at 90); (Johnson MPD Statement at 17.[3]) The time was approximately 8:50 p.m., and Johnson's headlights were on. (Johnson Dep. at 78-80, 95.)

On the Boulevard, Johnson was traveling in the eastbound lanes and maneuvered his tractor-trailer to the center turn lane in order to turn left into the T. A. Truck Stop parking lot. (Id. at 78.) There were no other vehicles in the turn lane, and Johnson turned on his left-turn signal.[4] (Johnson MPD Statement at 6.) As Johnson prepared to turn, he had a "clear view" of what he described as a "bunch of traffic" traveling in the westbound lanes. (Johnson Dep. at 78-80, 95); (Johnson MPD Statement at 16-17.) He, however, clearly saw the headlights of three vehicles, one of which was the Mazda pickup truck that Britt was driving, and discerned that numerous other vehicles trailed behind those three.[5] (Id. at 80-81.) Johnson testified that he

---

[3] On the day of the fatal collision, Johnson gave a recorded statement to two officers with the Montgomery Police Department. The statement has been transcribed and is part of the record. The court refers to this statement as "Johnson MPD Statement."

[4] The court notes that Johnson's testimony is conflicting as to whether he came to a complete stop in the center turn lane. (Compare Johnson Dep. at 83-84 with Johnson MPD Statement at 6.) For summary judgment purposes, the court presumes that he did not.

[5] Johnson estimated that the distance between his tractor-trailer and the two closest vehicles in the westbound lanes was 250 feet, while the third vehicle was further back at a distance of approximately 300 feet. (Johnson Dep. at 96-97, 103-09.)

knew that it would be impossible to safely complete the turn without the oncoming traffic either slowing down or stopping.[6] (Id. at 85-86.)

While turning left at a speed of approximately five miles per hour, Johnson tried to shift from third gear to fourth gear, but "missed fourth gear," and the tractor-trailer slowed down. (Id. at 8, 25, 82-84, 95); (Johnson MPD Statement at 25.) By this time Johnson's tractor-trailer was perpendicular to and blocking the three westbound lanes. Johnson looked right and noticed that the three vehicles in the westbound lanes were quickly approaching, but apparently were slowing down. (Johnson Dep. at 82-83, 93-94); (Johnson MDP Statement at 21.) Johnson "stepped on the gas . . . all the way to the floor[board]." (Johnson MPD Statement at 23-24.) About that time, Johnson felt vibrations emanating from the trailer, which he soon learned were caused by the impact of Britt's pickup truck hitting the trailer. (Id. at 28.) Johnson looked in his driver's side mirror and realized that the pickup truck had traveled under the trailer. He watched the pickup truck, which now had a severed roof, spin 180 degrees and halt near the center lane. (Id. at 29-31.) Johnson immediately stopped the tractor-trailer which by this time was in the parking lot of the T. A. Truck Stop and off the roadway. (Id. at 29, 32.)

Tragically, Britt died at the scene. Johnson received a traffic citation for failure to yield the right of way. (Hansen Dep. at 48.)

Seeking redress for her husband's death, Plaintiff filed a five-count complaint on September 6, 2006, in the Circuit Court of Montgomery County, Alabama, bringing state common-law claims against Defendants. Count I is grounded in theories of negligence,

---

[6] The court recognizes that Johnson contradicted himself, testifying also that he thought he had "enough time" to make the turn without blockading the approaching vehicles. (Johnson Dep. at 88, 90, 91, 92.) For summary judgment purposes, the court resolves the conflict by accepting Johnson's statement that he did not believe that there was ample time to complete the turn unless the oncoming traffic yielded.

wantonness and *respondeat superior*.  (Compl. ¶¶ 13-15.)  In Counts II, III and IV, Plaintiff raises claims against USA Truck for negligent/wanton entrustment (id. ¶¶ 16-20), negligent hiring (id. ¶¶ 21-26), and negligent retention.  (Id. ¶¶ 27-34).  Plaintiff refers to Count V, a negligence claim against USA Truck, as a claim that USA Truck "failed to enforce" federal statutes and regulations.  (Id. ¶¶ 35-38.)

Defendants removed this lawsuit to the United States District Court for the Middle District of Alabama on the basis of diversity jurisdiction.  See 28 U.S.C. §§ 1332(a), 1441(b). Defendants move for summary judgment on all claims, with the exception of the negligence claim in Count I.

## V. DISCUSSION

### A. Wantonness

Defendants argue that Plaintiff's wantonness claim fails because there is no evidence that "Johnson operated his tractor-trailer 'with knowledge of danger, or with consciousness.'"  (Defs. Mem. of Law at 10-11.)  At most, Defendants contend that "Johnson's actions amounted to mere inattention, heedlessness, or inadvertence"; he merely "misjudged distance relative to his turn." (Id. at 16.)

As defined by the Alabama Supreme Court, "'Wantonness' is . . . the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." McDougle v. Shaddrix, 534 So.2d 228, 231 (Ala. 1988) (internal citations omitted); see also Ala. Code § 6-11-20(b)(3) (defining "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others").  "To be wanton, it is not required that the

actor know that a person is within the zone made dangerous by the actor's conduct; rather, it is sufficient that the actor knows that there is a strong possibility that another might rightfully come within the zone." Hamme v. CSX Transp., Inc., 621 So.2d 281, 283 (Ala. 1993). "The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." Id. Moreover, in McDougle, the court cautioned that "[w]antonness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantonness." 534 So.2d at 231.

Following Alabama law and heeding McDougle's caution, the court finds that there is not a total lack of evidence on the issue of wantonness. As revealed by Johnson's deposition testimony, at the time of the collision, it was nighttime, and the road surface was wet. Johnson, who was attempting to make a lefthand turn across three highway lanes, had an unobstructed view of the oncoming vehicles traveling in the westbound lanes and knew that it was unlikely that he could safely complete the turn without the drivers of the approaching vehicles either slowing down or stopping.[7] (Johnson Dep. at 85-86.) Yet, without coming to a complete stop in the center turn lane and waiting for the traffic to clear, Johnson maneuvered his tractor-trailer perpendicular to and in the path of the oncoming vehicles, fully aware of the danger he was creating.

Defendants rely on Haynes v. Sarsfield, in which the court granted summary judgment on a wantonness claim. See No. 2:06cv519-MEF, 2007 WL 2409724, at *3 (M.D. Ala. Aug. 21, 2007). In Haynes, the driver of a tractor-trailer, who was at a "dead stop," prepared to turn right

---

[7] USA Truck's manager of the risk management department confirmed that, based upon Johnson's estimation that the distance between his tractor-trailer and the two closest vehicles in the westbound lanes was 250 feet, the oncoming vehicles would have had to stop in order to avoid colliding with Johnson's tractor-trailer. (McConnell Dep. at 3, 14-15); (Johnson MPD Statement at 6-7, 10, 13.)

onto a highway from the parking lot of truck stop.  As she began her right-hand turn, the tractor-trailer driver looked to the left, but momentarily was distracted by a pothole in the road.  See id. at *2.  As a consequence, the tractor-trailer driver did not see the plaintiff's vehicle approaching on the roadway from the left.  See id.  While the court observed that "it remains to be seen if [the tractor-trailer driver] was negligent in failing to keep her eyes to the left–instead of focusing on avoiding driving over the pothole," it found that there was a "'total lack of evidence'" that the tractor-trailer driver "acted consciously" when she turned without seeing the plaintiff or knew that injury would likely result when she turned left.  Id. at *3 (quoting McDougle, 534 So.2d at 231).

Here, contrary to Haynes, there is evidence that Johnson did not come to a standstill in the center turn lane, that he clearly saw the oncoming vehicles approaching from his right, and that he actually knew that by turning into the path of the oncoming vehicles a collision with one or more of the vehicles was likely, unless the oncoming traffic slowed or stopped.  Haynes, plain and simple, is factually distinguishable from this case.

In sum, having considered the totality of the evidence, the court finds that Plaintiff has demonstrated a genuine issue of material fact as to whether Johnson acted "reckless[ly]" or in "conscious disregard of the rights or safety of others," Ala. Code § 6-11-20(b)(3), when on that dark, drizzly February night, Johnson proceeded to drive his tractor-trailer across three lanes of traffic with knowledge that the oncoming vehicles would have to react in order to avoid a

collision.[8]  Accordingly, the court finds that summary judgment is due to be denied on Plaintiff's

wantonness claim in Count I.

### B.  Negligent/Wanton Entrustment, Negligent Hiring, Negligent Supervision and Negligent Retention (Counts II - V)

The Alabama Supreme Court recognizes the torts of negligent/wanton entrustment,

negligent hiring, negligent supervision and negligent retention.[9]  See Armstrong Bus. Servs. v.

AmSouth Bank, 817 So.2d 665, 682 (Ala. 2001) (negligent supervision);  CP & B Enters., Inc. v.

Mellert, 762 So.2d 356 (Ala. 2000) (negligent hiring);  Bruck v. Jim Walter Corp., 470 So.2d

1141, 1144 (Ala. 1985) (negligent/wanton entrustment); Brown v. Vanity Fair Mills, Inc., 277

So.2d 893, 895 (Ala. 1973) (negligent retention).

---

[8] The court recognizes that Plaintiff asks the court to infer from Johnson's admitted use of marijuana on the Saturday preceding the Monday accident and the post-wreck positive drug test that Johnson was impaired by marijuana on the day of the accident.  (Pl. Mem. of Law at 10-11.) The court need not decide whether there are sufficient facts in the summary judgment record from which one can infer that Johnson was impaired by marijuana at the time of the accident given that the court finds that Plaintiff otherwise has presented a jury issue on the wantonness claim.

[9] The court notes that in Maendele v. Rhett Butler Trucking, Inc., cited by Defendants, the court characterized a claim similar to Plaintiff's Count V as a negligent supervision claim premised on averments that the trucking company "negligently supervised [its employee's] driving and failed to realize that [the employee] was violating federal regulations."  No. 2:03cv806-MEF, 2005 WL 1367202, at *5 (M.D. Ala. 2005); see also Rodopoulos v. Sam Piki Enters., 570 So.2d 661, 665 (Ala. 1990) (recognizing that a jury can "consider the [Federal] Motor Carrier Safety Regulations in determining defendants' standard of care [in a negligence case]").  Maendele supports Defendants' argument concerning how to characterize Plaintiff's claim in Count V.

Plaintiff identifies Count V as a claim for negligent "failure to enforce" regulations, the same as the Maendele plaintiff.  (Compl. ¶ 36); (see also Pl. Mem. of Law at 17 (stating that Count Five is a "negligence enforcement" claim).)  Plaintiff, however, has not cited any opinion in which an Alabama court expressly has recognized such a claim, and the court is aware of none. Plaintiff also has not raised any objection to Defendants' characterization of Count V as alleging negligent supervision.  Indeed, in another section of her summary judgment response, as well as in the proposed pretrial order, Plaintiff proceeds under the assumption that a negligent supervision claim is part of her complaint.  Under these circumstances, the court will construe Count V as a claim for negligent supervision against USA Truck.

Arguing that Johnson proximately caused Britt's death, Plaintiff contends that USA Truck is liable because it hired and retained Johnson, with knowledge that Johnson was an incompetent driver, and negligently entrusted its tractor-trailer to Johnson to drive, without providing adequate supervision.

The torts at issue have common elements. Namely, to prove a claim under Alabama law for either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent. See Armstrong Bus. Servs., 817 So.2d at 682 (negligent supervision); Bruck, 470 So.2d at 1144 (negligent/wanton entrustment); Brown, 277 So.2d at 895 (negligent retention); Sanders v. Shoe Show, Inc., 778 So.2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring).

As to each of these torts, USA Truck contends that there is "no specific evidence" that Johnson was an incompetent driver or that USA Truck "knew, or reasonably should have known, of his incompetence." (Defs. Mem. of Law at 7-9.) In other words, Defendants' motion for summary judgment focuses on the two elements which the torts of negligent/wanton entrustment, negligent hiring, negligent supervision and negligent retention share in common.

Defining incompetency in the context of a negligent entrustment claim, the Alabama Supreme Court has explained that a plaintiff must show

> that the driver to whom the defendant entrusted the vehicle was "unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions," including "general incompetence" or "habitual negligence." More specifically, proof may "be established by evidence of previous acts of negligent or reckless driving, . . . previous accidents, or previous acts of driving while intoxicated."

926 So.2d 315, 321-22 (Ala. 2005) (internal citation omitted); see also Halford v. Alamo

Rent-A-Car, LLC, 921 So.2d 409, 413-14 (Ala. 2005) (summarizing prior precedent on the issue

of incompetency in a single sentence: "the incompetence of a driver is measured by the driver's

demonstrated ability (or inability) to properly drive a vehicle").

Furthermore, on the question of the employer's knowledge of the employee's

incompetence, the Alabama Supreme Court has stated that

> [i]n the master and servant relationship, the master is held responsible for his
> servant's incompetency when notice or knowledge, either actual or presumed, of
> such unfitness has been brought to him. Liability depends upon its being
> established by affirmative proof that such incompetency was actually known by the
> master or that, had he exercised due and proper diligence, he would have learned
> that which would charge him in the law with such knowledge.

Armstrong Bus. Servs., 817 So.2d at 682 (citations and internal quotation marks omitted).

Opposing summary judgment, Plaintiff relies on a laundry list of evidence as raising a

genuine issue of material fact that (1) Johnson was an incompetent driver and that (2) USA Truck

knew or should have known of Johnson's incompetence. (See Pl. Mem. of Law at 5-7.) Similar

evidence is recited by Plaintiff in the proposed pretrial order. The court has particular concerns

about issue (1).

Under Alabama law, the heart of the competency issue is whether Plaintiff's evidence

bears on Johnson's "ability (or inability) to properly drive a vehicle." Halford, 921 So.2d

at 413-14. The court, however, finds that Plaintiff has not sufficiently explained how under

Alabama law her evidence is relevant to the issue of whether Johnson was an unskilled driver.

To cite one example, Plaintiff relies heavily on the fact that Johnson's license had been

suspended prior to and during his employment with USA Truck. The Alabama Supreme Court,

10

however, has stated on more than one occasion, that "the mere nonpossession of a valid driver's license is not evidence of incompetence." Edwards v. Valentine, 926 So.2d 315, 323 (Ala. 2005) (negligent entrustment) (collecting cases). Alabama law reveals that the probative value of a suspended license in the context of the claims presented in this case depends upon the reason underlying the suspension. See id. Halford is illustrative. It held that "evidence of the suspension of one's driver's license for failure to discharge a citation for a nonmoving violation is not substantial evidence, standing alone, of incompetence to operate a vehicle." Halford, 921 So.2d at 417. The evidence in this case pertaining to the suspensions appears seemingly close to the type prohibited by Edwards and Halford. From aught that appears, Johnson's suspensions resulted from his "failure to appear in court" and his failure to maintain insurance on his personal vehicle, all nonmoving violations. (See USA Truck 295 (Ex. A)); (Johnson Dep. at 67-68, 149.) Clarification as to the precise reasons underlying the suspensions of Johnson's driving license, as well as to the probative value of this evidence, is needed.

Again, on the present record, the court is perplexed as to how each category of evidence relied upon by Plaintiff relates to Johnson's driving skills. The court is not saying at this time that the evidence is relevant or that it is not relevant to the claims of negligent/wanton entrustment and negligent hiring, supervision and retention. The court simply is saying that the present record is inadequate for the court to make an informed ruling. Plaintiff's legal analysis is terse, and Defendants, who did not file a summary judgment reply brief, have not shed any light on whether Plaintiff's evidence suffices under Alabama law. In short, the court finds that further briefing would be beneficial. Accordingly, the court will defer a ruling on Defendants' summary judgment motion as to Counts II - V until after briefs are filed.

## VI.  ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants USA Truck, Inc., and Theodore L. Johnson's motion for partial summary judgment (Doc. No. 16) is hereby DENIED on the wantonness claim in Count I, but otherwise the court's ruling on Counts II, III, IV and V is RESERVED pending further briefing from the parties.

It is further CONSIDERED and ORDERED that on or before December 28, 2007, Plaintiff file a brief reciting with particularity all evidence upon which she relies to prove Johnson's incompetence and how that evidence demonstrates Johnson's inability to properly drive a vehicle.  Defendants shall file a responsive brief on or before January 8, 2008.

DONE this 20th day of December, 2007.

/s/ Truman M. Hobbs
SENIOR UNITED STATES DISTRICT JUDGE

12

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

                                                                    Rev.: 4/04

2.    **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).